**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

**UNITED STATES OF AMERICA,**

     **v.**                                   **Criminal Case No. 3:12cr83**

**MARK SHERMAN WILT,**

            **Defendant.**

## <u>MEMORANDUM OPINION</u>

This matter comes before the Court on Defendant Mark Sherman Wilt's Motion for Compassionate Release Pursuant to Section 603(b) of the First Step Act of 2018 and 18 U.S.C. § 3582(C)(1)(A) (the "Motion for Compassionate Release" or the "Motion"). (ECF No. 61.)[1] The United States responded in opposition and Mr. Wilt replied. (ECF Nos. 67, 68.)

This matter is ripe for disposition. The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process. For the reasons that follow, the Court will deny the Motion for Compassionate Release. (ECF No. 61.)

### I. Background

**A.**    <u>**Mr. Wilt's Underlying Offense**</u>

On May 22, 2012, a grand jury charged Mr. Wilt in a five count criminal indictment: (1) Interference with Commerce by Robbery, in violation of 18 U.S.C. § 1951 (Count One); (2) Use,

---

[1] On June 16, 2023, Mr. Wilt, proceeding *pro se*, filed a Letter Motion for Compassionate Release. (ECF No. 54.) On June 22, 2023, the Court directed the Clerk to appoint the Federal Public Defender (the "FPD") to represent Mr. Wilt for the purposes of Section 603(b) of the First Step Act. (ECF No. 55.) On October 23, 2023, after requesting and receiving two extensions of time, the FPD filed the current Motion. (ECF No. 61.) On February 22, 2024, the Court denied as moot Mr. Wilt's Letter Motion for Compassionate Release. (ECF No. 66, at 2.)

Carry, Brandish a Firearm During and Relating to a Felony Crime of Violence, in violation of 18 U.S.C. § 924(c) (Count Two); (3) Possession of Firearm by Convicted Felon, in violation of 18 U.S.C. § 922(g)(1) (Count Three); (4) Transportation of Stolen Firearm in Interstate Commerce, in violation of 18 U.S.C. § 922(i) (Count Four); and, (5) Possession of Stolen Firearm, in violation of 18 U.S.C. § 922(j) (Count Five). (ECF No. 1, at 1.) On August 1, 2012, Mr. Wilt entered into a written plea agreement with the United States in which he pleaded guilty to Count One and Count Two of the Indictment. (ECF No. 15, at 1.)

The Plea Agreement and the Statement of Facts describe the conduct of Mr. Wilt's underlying offense. (ECF Nos. 15, 16.) On or about March 22, 2012, Mr. Wilt "rob[bed] at gunpoint the Shell gas station located at 11530 Midlothian Turnpike, Midlothian, Virginia," by taking money from the Shell employee "against the employee's will, by means of actual and threatened force, violence, and fear of injury to his person." (ECF No. 16 ¶ 1.) During and in relation to this robbery, Mr. Wilt "knowingly and unlawfully use[d], carr[ied], and brandish[ed] a firearm" that he "had stolen from a vehicle on or about February 14, 2012, in Altoona, Pennsylvania." (ECF No. 16 ¶ 2.)

Prior to Mr. Wilt's November 1, 2012 sentencing, the probation officer prepared the Presentence Investigation Report ("PSR") for Mr. Wilt, summarizing his offense level and criminal history. (ECF No. 21.) As to Count One, Mr. Wilt's Base Offense Level was 20. (ECF No. 21, at 34.) He received a five-point enhancement for brandishing or possessing a firearm, resulting in an Adjusted Offense Level of 25. (ECF No. 21, at 34.) Mr. Wilt received a three-point reduction for Acceptance of Responsibility, resulting in a Total Offense Level of 22 for

Count One. (ECF No. 21, at 42.)[2] As to Count Two, an 84 month consecutive mandatory minimum sentence was required by statute. (ECF No. 21, at 35.)

Mr. Wilt's prior offenses resulted in 15 criminal history points, which established a Criminal History Category of VI. (ECF No. 21 ¶ 74 & at 40–41.) Prior convictions for which Mr. Wilt received criminal history points include, *inter alia*, multiple offenses of theft and burglary; entered or remained unlawfully in a building with intent to commit a theft, felony or assault; possession of an unregistered sawed-off shotgun; attempted threat against life/property; and aggravated assault. (ECF No. 21, at 37–40.)

The Probation Officer determined Mr. Wilt's guideline range pursuant to United States Sentencing Guideline § 4B1.1(c)(2)(B), which references the Career Offender Table for 18 U.S.C. § 924(c) offenders. (ECF No. 21, at 45.)[3] Application of § 4B1.1(c)(2)(B) resulted in a guideline range of 262 to 327 months. (ECF No. 21, at 42, 45.) However, the statutorily authorized maximum sentence restricted the guideline range to 240 months as to Count One. (ECF No. 21, at 42.)

The Court sentenced Mr. Wilt to 240 months' imprisonment, consisting of 156 months' imprisonment on Count One and 84 months' imprisonment on Count Two, to be served consecutively, to be followed by three years of supervised release on each count, all to run concurrently. (ECF No. 25, at 2–3.)

---

[2] The body of the PSR suggests a Total Offense Level of 29. (ECF No. 21 ¶¶ 73–74 & at 45.) However, this discrepancy is immaterial because the Probation Officer determined Mr. Wilt's guidelines range pursuant to U.S.S.G. § 4B1.1(c)(2)(B) by referencing the Career Offender Table for 18 U.S.C. § 924(c) offenders. (ECF No. 21, at 45.)

[3] The Probation Officer determined that the Career Offender Table resulted in a greater guideline range than the guideline range that would have resulted from applying the mandatory minimum consecutive penalty required by § 924(c) to the minimum and maximum of the otherwise applicable guideline range for the other count of conviction. (ECF No. 21, at 45.)

The PSR also provided information on Mr. Wilt's physical and mental condition and his history of substance abuse. (ECF No. 21 ¶¶ 56–58.) Mr. Wilt reported that he suffered from a heart murmur almost his entire life and from high blood pressure for five years, and that he received a diagnosis of Hepatitis-C in 2001, but that his health was otherwise good. (ECF No. 21 ¶ 56.) He reported no history of any other serious or chronic medical conditions or illnesses, no prior hospitalizations, no allergies, nor any prescribed medications except an antibiotic and Enalapril. (ECF No. 21 ¶ 56.) Regarding Mr. Wilt's mental and emotional health, Mr. Wilt reported diagnoses of Post-Traumatic Stress Disorder and Anti-Social Personality Disorder and recounted a lengthy history of monthly or bi-monthly psychological treatment. (ECF No. 21 ¶ 57.) Mr. Wilt also noted that he began consuming alcohol at the age of 13 and using drugs at 12. (ECF No. 21 ¶ 58.) He had participated in substance abuse treatment only while incarcerated. (ECF No. 21 ¶ 58.)

Mr. Wilt is currently housed at FCI Hazelton in Bruceton Mills, West Virginia. *See Fed. Inmate Locator*, BUREAU OF PRISONS, https://www.bop.gov/inmateloc/ (last visited November 1, 2024); *see FCI Hazelton*, BUREAU OF PRISONS, https://www.bop.gov/locations/institutions/haf/ (last visited November 1, 2024). The Bureau of Prisons ("BOP") lists Mr. Wilt's release date as October 26, 2029. *See id.*

## B.   Mr. Wilt's Motion for Compassionate Release Based on Extraordinary and Compelling Circumstances

On October 23, 2023, Mr. Wilt, acting through counsel, filed the instant Motion for Compassionate Release. (ECF No. 61.)

In the Motion, Mr. Wilt incorporates by reference statements in his Letter Motion, (ECF No. 54), that "he has numerous medical conditions that the BOP is not adequately treating," including "'severe issues'" with his heart and kidneys and a traumatic brain injury. (ECF No.

4

61, at 2 (quoting ECF No. 54).) Mr. Wilt describes that he has been assaulted numerous times, "'lifeflighted,'" "'died/revived,'" and that his medications have been stopped "'for no known reason.'" (ECF No. 61, at 2 (quoting ECF No. 54).) Also, Mr. Wilt states that he was "sentenced as a career offender for offenses that no longer constitute crimes of violence" per the United States Sentencing Guidelines Manual. (ECF No. 61, at 2.)

On March 8, 2024, the United States filed a Response in Opposition. (ECF No. 67.) The United States first argues that Mr. Wilt does not meet the requirements for a reduction based on an unusually long sentence under U.S.S.G. § 1B1.13(b)(6). (ECF No. 67, at 12–15.) The United States asserts in the alternative that even if he did, the Sentencing Commission exceeded its congressionally delegated authority in promulgating Subsection (b)(6). (ECF No. 67, at 15–28.) The United States further argues that Mr. Wilt cannot establish that changes in law produce a grossly disparate sentence, (ECF No. 67, at 28–29), and that Mr. Wilt's medical conditions and history of being assaulted do not present extraordinary and compelling circumstances warranting a sentence reduction, (ECF No. 67, at 29). Finally, the United States contends that the sentencing factors in 18 U.S.C. 3553(a)[4] weigh against Mr. Wilt's immediate release. (ECF No. 67, at 29–30.)

---

[4] Section 3553(a) of Title 18 of the United States Code states, in pertinent part:

The court, in determining the particular sentence to be imposed, shall consider—

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
> > (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> >
> > (B) to afford adequate deterrence to criminal conduct;

## II.  Legal Standard:  Compassionate Release Under the First Step Act of 2018

Prior to the First Step Act of 2018, an individual could not petition the district court for relief on compassionate release grounds without approval from the BOP.  *See Coleman v. United States*, 465 F. Supp. 3d 543, 546 (E.D. Va. 2020).  In 2018, Congress enacted the First Step Act to provide incarcerated individuals the opportunity to directly petition the courts for compassionate release under 18 U.S.C. § 3582(c)(1)(A).[5]  Under the First Step Act, criminal

---

> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and sentencing range established for—
>
> > (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . .
>
> (5) any pertinent policy statement—
>
> > (A) issued by the Sentencing Commission . . .
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

[5] Section 3582(c)(1)(A) states, in pertinent part:

> The court may not modify a term of imprisonment once it has been imposed except that—
>
> > (1) in any case—
>
> > > (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has

defendants may petition courts on their own initiative to modify their sentences.  *Coleman*, 465

F. Supp. 3d at 546.

Before granting a reduction, courts must consider the factors set forth in 18 U.S.C.

§ 3553(a), *see* 18 U.S.C. § 3582(c)(1)(A), and evidence of rehabilitation and other post-

conviction conduct.  *See United States v. Martin*, 916 F.3d 389, 397–98 (4th Cir. 2019)

(requiring consideration of post-conviction evidence and statutory sentencing factors in the

context of a sentence reduction sought pursuant to § 3582(c)(2)); *see also United States v.*

*McDonald*, 986 F.3d 402, 412 (4th Cir. 2021) (extending *Martin* to motions filed pursuant to

§ 3582(c)(1)(B)).  However, a petitioner's rehabilitation alone does not provide sufficient

grounds to warrant a sentence modification.  *See* 28 U.S.C. § 994(t).[6]

---

> fully exhausted all administrative rights to appeal a failure of the
> Bureau of Prisons to bring a motion on defendant's behalf or the
> lapse of 30 days from the receipt of such a request by the warden
> of the defendant's facility, whichever is earlier, may reduce the
> term of imprisonment (and may impose a term of probation or
> supervised release with or without conditions that does not exceed
> the unserved portion of the original term of imprisonment), after
> considering the factors set forth in 3553(a) to the extent that they
> are applicable, if it finds that—
>
>> (i) extraordinary and compelling reasons warrant such a
>> reduction . . .
>>
>> (ii)  . . . and that such a reduction is consistent with
>> applicable policy statements issued by the Sentencing
>> Commission[.]

18 U.S.C. § 3582(c)(1)(A).

[6] 28 U.S.C. § 994(t) states:

> The Commission, in promulgating general policy statements regarding the
> sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall
> describe what should be considered extraordinary and compelling reasons for
> sentence reduction, including the criteria to be applied and a list of specific

A.    **Exhaustion of Administrative Remedies**

Although the Court generally cannot "modify a term of imprisonment once it has been imposed," the defendant may bring a motion to modify his or her sentence "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . ." 18 U.S.C. § 3582(c)(1)(A); *see also United States v. McCoy*, 981 F.3d 271, 283 (4th Cir. 2020) ("Congress, aware of the BOP's history of extensive delays, also provided a '30-day lapse' alternative, under which a defendant may proceed directly to district court if his [or her] request is not acted on within that time."). "Accordingly, a petitioner seeking compassionate release is generally required to exhaust his or her administrative remedies prior to bringing a motion before the district court." *Casey v. United States*, No. 4:18-CR-4 (RAJ), 2020 WL 2297184, at *1 (E.D. Va. May 6, 2020); *see also United States v. Kibble*, 992 F.3d 326, 330 (4th Cir. 2021) (same).

In response to Mr. Wilt's Motion for Compassionate Release, the United States appears to concede that Mr. Wilt has exhausted his request for compassionate release pursuant to U.S.C. § 3582(c)(1)(A) by noting that Mr. Wilt "has made two requests for compassionate release . . . both of which" the BOP denied.  (ECF No. 67, at 4.)

B.    **Courts Must Find Extraordinary and Compelling Reasons Justifying Compassionate Release**

As amended by the First Step Act, 18 U.S.C. § 3582(c)(1)(A) authorizes courts to modify terms of imprisonment after considering the factors set forth in 18 U.S.C. § 3553(a) if

---

examples. *Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.*

28 U.S.C. § 994(t) (emphasis added).

"extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i).

The United States Sentencing Commission further defines "extraordinary and compelling

reasons." U.S.S.G. § 1B1.13(b); *see United States v. Kalivretenos*, No. 1:15-CR-73 (AJT), ECF

No. 109, at *4 (E.D. Va. May 21, 2020).[7]

The 2021 Sentencing Guidelines enumerated four bases on which to evaluate a motion

for compassionate release. U.S.S.G. § 1B1.13, n.1(A)–(D) (U.S. Sent'g Comm'n 2021)

(identifying four bases to establish extraordinary and compelling reasons for release: (A)

medical conditions; (B) age; (C) family circumstances; and, (D) other reasons). U.S.S.G.

§ 1B1.13, n.1(A)–(D).

In 2023, the United States Sentencing Commission published new sentencing guidelines

amendments (the "2023 Sentencing Guidelines Amendments" or "2023 Amendments").

Pursuant to the 2023 Amendments, the Sentencing Guidelines now identify six instructive

categories of extraordinary and compelling reasons that may allow for a sentence reduction.

These are:

> certain medical circumstances of the defendant, such as terminal illness or the
> inability to receive specialized medical care while incarcerated, [U.S.S.G.]

---

[7] Congress did not define "extraordinary and compelling reasons" in § 3582(c)(1)(A).
However,

> the Sentencing Commission . . . addressed the issue in a policy statement, United
> States Sentencing Guideline § 1B1.13, which provided the BOP with several
> categories of extraordinary and compelling reasons to consider. For years
> following the passage of the First Step Act, the Sentencing Commission failed to
> update § 1B1.13 to account for motions filed by defendants, meaning the policy
> did not bind the courts when presented with a defendant's motion for
> compassionate release. A court therefore remained empowered . . . to consider
> any extraordinary and compelling reason for release that a defendant might raise.

*United States v. Burrell*, No. 3:04-CR-364 (JAG), 2023 WL 7726404, at *4 n.7 (E.D. Va. Nov.
15, 2023) (cleaned up).

§ 1B1.13(b)(1)[8]; the defendant's age, *id.* § 1B1.13(b)(2)[9]; the defendant's family circumstances, *id.* § 1B1.13(b)(3)[10]; the fact that the defendant, while in custody, was the victim on sexual or physical abuse committed by, or at the direction of, a correctional officer, *id.* § 1B1.13(b)(4)[11]; the defendant received

---

[8] U.S.S.G. § 1B1.13(b)(1); *cf.* U.S.S.G. § 1B1.13 n.1(A) (2021).

[9] U.S.S.G. § 1B1.13(b)(2) provides:

(2) AGE OF THE DEFENDANT.—The defendant (A) is at least 65 years old; (B) is experiencing a serious deterioration in physical or mental health because of the aging process; and (C) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

U.S.S.G § 1B1.13(b)(2) (2023); *cf.* U.S.S.G. § 1B1.13 n.1(B) (2021).

[10] U.S.S.G. § 1B1.13(b)(3) provides:

(3) FAMILY CIRCUMSTANCES OF THE DEFENDANT.—

(A) The death or incapacitation of the caregiver of the defendant's minor child or the defendant's child who is 18 years of age or older and incapable of self-care because of a mental or physical disability or a medical condition.

(B) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(C) The incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent.

(D) The defendant establishes that circumstances similar to those listed in paragraphs (3)(A) through (3)(C) exist involving any other immediate family member or an individual whose relationship with the defendant is similar in kind to that of an immediate family member, when the defendant would be the only available caregiver for such family member or individual. For purposes of this provision, "immediate family member" refers to any of the individuals listed in paragraphs (3)(A) through (3)(C) as well as a grandchild, grandparent, or sibling of the defendant.

U.S.S.G. § 1B1.13(b)(3) (2023); *cf.* U.S.S.G. § 1B1.13 n.1(C) (2021).

[11] U.S.S.G. § 1B1.13(b)(4) provides:

(4) VICTIM OF ABUSE.—The defendant, while in custody serving the term of imprisonment sought to be reduced, was a victim of:

an 'unusually long sentence,' *id.* § 1B1.13(b)(6) [12]; and 'any other circumstances or combination of circumstances . . . similar in gravity to' the circumstances 'described in paragraphs (1) through (4).' *Id.* § 1B1.13(b)(5) [13].

---

(A) sexual abuse involving a "sexual act," as defined in 18 U.S.C. § 2246(2) (including the conduct described in 18 U.S.C. § 2246(2)(D) regardless of the age of the victim); or

(B) physical abuse resulting in "serious bodily injury," as defined in the Commentary to §1B1.1 (Application Instructions);

that was committed by, or at the direction of, a correctional officer, an employee or contractor of the Bureau of Prisons, or any other individual who had custody or control over the defendant.

For purposes of this provision, the misconduct must be established by a conviction in a criminal case, a finding or admission of liability in a civil case, or a finding in an administrative proceeding, unless such proceedings are unduly delayed or the defendant is in imminent danger.

U.S.S.G § 1B1.13(b)(4) (2023).

[12] U.S.S.G. § 1B1.13(b)(6) provides:

(6) UNUSUALLY LONG SENTENCE.—If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

U.S.S.G § 1B1.13(b)(6) (2023).

[13] U.S.S.G. § 1B1.13(b)(5) provides:

(5) OTHER REASONS.—The defendant presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4).

U.S.S.G § 1B1.13(b)(5) (2023); *cf.* U.S.S.G. § 1B1.13 n.1(D) (2021).

*United States v. Tucker*, 2023 WL 8357340, at *5 (D. Md. Dec. 1, 2023).

The United States Court of Appeals for the Fourth Circuit explained—even before the 2023 Sentencing Guidelines Amendments—that "[w]hen a defendant exercises his [or her] new right to move for compassionate release on his [or her] own behalf . . . § 1B1.13 does not apply, and . . . § 3582(c)(1)(A)'s consistency requirement does not constrain the discretion of district courts." *McCoy*, 981 F.3d at 281. Since *McCoy*, the 2023 Amendments have taken effect. These amendments clarify the Commission's view on what could constitute "extraordinary and compelling reasons" for a sentence reduction under the First Step Act.[14] The *McCoy* court has noted, however, that the Guidelines, while helpful, are merely advisory and do not bind the Court. "[D]istrict courts are 'empowered . . . to consider *any* extraordinary and compelling reason for release that a defendant might raise.'" *McCoy*, 981 F.3d at 284 (quoting *United States v. Zullo*, 976 F.3d 228, 230 (2d Cir. 2020)).

The United States Supreme Court has determined that "the First Step Act allows district courts to consider intervening changes of law or fact in exercising their discretion to reduce a sentence." *Concepcion v. United States*, 597 U.S. 481, 500. (2022). District courts within the Fourth Circuit have decided that sentencing disparities resulting from intervening changes in the Fourth Circuit's interpretation of the sentencing guidelines can constitute an "extraordinary and

---

[14] As other courts have observed,

[t]he Fourth Circuit has yet to address the impact the amended Sentencing Guidelines have on *McCoy* and similar rulings or precisely how courts should apply the amended policy statement in motions for compassionate release, particularly motions filed before November 1, 2023. The Court need not reach this question, however, because [Mr. Wilt] has failed to establish an extraordinary and compelling reason to reduce his sentence applying both the case law before November 1, 2023, and the amended Sentencing Guidelines.

*Burrell*, 2023 WL 7726404, at *4 n.7.

compelling reason" for compassionate release.[15] *See, e.g., United States v. Redd*, 444 F. Supp. 3d 717, 723–724 (E.D. Va. 2020) (finding that the "gross disparity between the sentence Mr. Redd received and the sentence he would have received after the First Step Act . . . constitute[s] [an] extraordinary and compelling reason[] that warrant[s] a reduction to Mr. Redd's sentence"); *United States v. Fennell*, 570 F. Supp. 357, 363 (W.D. Va. 2021) (finding that "the significant disparity between Fennell's current sentence and the [ten years reduced] sentence he would face today for the same offense provides an extraordinary and compelling basis for a sentence reduction under § 3582(c)(1)(A)"); *United States v. Arey*, 461 F. Supp. 2d 343, 350 (W.D. Va. 2020) ("The fact that if [the defendant] was sentenced today for the same conduct he would likely receive a [forty year] lower sentence than the one he is currently serving constitutes an 'extraordinary and compelling' reason justifying potential sentence reduction under § 3582(c)(1)(A)"); *United States v. Banks*, 2022 WL 220638, at *2–3, *6 (W.D. Va. Jan. 25, 2022) (88-month difference between the low end of defendant's career offender sentencing range and the low end of the non-career offender sentencing range is "such [a] gross disparit[y] in sentencing" that it constituted an extraordinary and compelling circumstance); *United States v. Williams*, No. 1:14-CR-428 (TSE), 2021 WL 5827327, at *6–7 (E.D. Va. Dec. 8, 2021) (difference of "more than three years longer than the high end of the guidelines" that would have

---

[15] The 2023 Sentencing Guideline Amendments added subsection (c) to U.S.S.G. § 1B1.13, which provides that a change in the law, or in non-retroactive Guidelines amendments, ordinarily shall not be considered when determining whether extraordinary and compelling reasons exist. However, subsection (c) includes an important caveat: "if a defendant otherwise establishes that extraordinary and compelling reasons warrant a sentence reduction under this policy statement, a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) may be considered for purposes of determining the extent of any such reduction." U.S.S.G. § 1B1.13(c) (2023).

applied under *Norman*[16] warranted a reduction in defendant's sentence from 168 months to 125

months); *United States v. Huggins*, 2021 WL 3025459, at *4 (W.D. Va. July 16, 2021)

(sentencing disparity of more than five years was a "gross disparity" and an "extraordinary and

compelling" reason warranting a sentence reduction); *but see United States v. Hinton*, No. 2:15-

CR-80 (MSD), 2022 WL 988372, at *5 (E.D. Va. Mar. 31, 2022) (three to six year sentencing

disparity "not so drastic that it constitutes an extraordinary and compelling reason for relief").

## 1.    <u>Medical Circumstances of the Defendant</u>

The 2023 Sentencing Guidelines Amendments explain in greater detail what a court

should consider when considering medical circumstances as a basis for compelling and

extraordinary reason to grant compassionate release.  The relevant section of U.S.S.G.

§ 1B1.13(b) reads:

> (1) MEDICAL CIRCUMSTANCES OF THE DEFENDANT.—
>      *      *      *
> (B) The defendant is—
>
>> (i) suffering from a serious physical or medical condition,
>>
>> (ii) suffering from a serious functional or cognitive impairment, or
>>
>> (iii) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> (C) The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death.

---

[16] *United States v. Norman*, 935 F.3d. 232 (4th Cir. 2019) (finding that defendant was subject to a lower guideline range because a drug conspiracy conviction would not qualify defendant as a "career offender").

(D) The defendant presents the following circumstances—

    (i) the defendant is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority;

    (ii) due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of infectious disease or the ongoing public health emergency described in clause (i); and

    (iii) such risk cannot be mitigated in a timely or adequate manner.

U.S.S.G. § 1B1.13(b)(1)(B)–(D).

Regarding the coronavirus outbreak, "courts have found extraordinary and compelling reasons for compassionate release when an inmate shows both particularized susceptibility to the disease and a particularized risk of contracting the disease at his [or her] prison facility." *United States v. Feiling*, 453 F. Supp. 3d 832, 841 (E.D. Va. 2020) (collecting cases). However, "the mere existence of COVID-19 in society . . . cannot independently justify compassionate release." *Id.* (quoting *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) (internal quotation marks omitted)).

### 2.    <u>Age of the Defendant</u>[17]

In addition to medical circumstances, the 2023 Sentencing Guideline Amendments provide that extraordinary and compelling reasons could justify a reduced sentence if "[t]he

---

[17] In his Motion, Mr. Wilt does not directly assert age as a basis for seeking compassionate release. However, this Court has discretion to consider *any* potential extraordinary and compelling reason. *See McCoy*, 981 F.3d at 284 (quoting *Zullo*, 976 F.3d at 230). Because Mr. Wilt raises a claim of age in substance if not in name when he asserts that his medical conditions are "especially concerning for a man who is now 60 years old," (ECF No. 61, at 15), the Court will assess this potential basis for compassionate release.

defendant (A) is at least 65 years old; (B) is experiencing a serious deterioration in physical or mental health because of the aging process; and (C) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." U.S.S.G. § 1B1.13(b)(2).

**C.    Courts Must Weigh the Statutory Sentencing Factors Before Granting Compassionate Release**

Even after finding a sufficient "extraordinary and compelling reason" for compassionate releases, the Court must then consider the Section 3553(a) factors and any relevant post-conviction conduct before modifying a defendant's sentence. 18 U.S.C. § 3582(c)(1)(A). The Court must weigh factors including "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). The Court also must consider "the need for the sentence imposed to promote respect for the law . . . ; to afford adequate deterrence to criminal conduct; . . . [and] to protect from the public from further crimes of the defendant." 18 U.S.C. § 3553 (a)(2). The statutory sentencing factors direct the Court to consider the kinds of sentences available and the sentencing range established for the offense. 18 U.S.C. § 3553(a)(4).

### III.  Analysis

After due consideration, the Court will deny the Motion for Compassionate Release. (ECF No. 61.) Although Mr. Wilt submits, (ECF No. 61, at 6), and the United States concedes, (ECF No. 67, at 4), that he has exhausted his administrative remedies, the Court will deny the Motion for Compassionate Release upon finding that Mr. Wilt does not offer any "extraordinary and compelling reasons" to support his request for release. *See* 18 U.S.C. § 3582(c)(1)(A)(i). Additionally, even were Mr. Wilt to offer an "extraordinary and compelling reason" to support his request for release, which he did not, the Court would find that the applicable statutory sentencing factors under Section 3553 do not support a reduction in his sentence.

16

A.    **Mr. Wilt's Medical Conditions and Age Do Not Establish an Extraordinary and Compelling Reason for Release**

Mr. Wilt's Motion for Compassionate Release contends that the Court should grant his immediate release because his medical conditions together with other factors merit a reduction. (ECF No. 61, at 14.)  However, the record does not show that Mr. Wilt's medical conditions, alone or in combination with other factors, satisfy the requirements of Subsection (b)(6).  Mr. Wilt makes three arguments regarding his medical conditions:  first, that he has numerous chronic medical conditions; second, that his medical providers stopped his medications "for no known reason," (ECF No. 54, at 1); and third, that his chronic medical conditions increase his susceptibility to COVID-19.  The Court addresses each in turn.

1.    **Mr. Wilt's Chronic Medical Conditions**

In support of his contention that his medical conditions warrant a reduction, Mr. Wilt points to issues with his "heart, kidneys, and brain due to head trauma."  (ECF No. 61, at 14.) He also cites BOP medical records identifying "hypertension, possible small vessel ischemic disease . . . , osteoarthritis of knee . . . , and chronic kidney disease," as well as a body mass index in the "overweight, borderline obese zone."  (ECF No. 61, at 15.)  Mr. Wilt's medical conditions further include hepatitis C, gastrointestinal pain and dark colored urine, general anxiety disorder, and depressive disorder.  (ECF No. 61, at 15.)  Mr. Wilt notes that his medical conditions—specifically hypertension, chronic kidney disease, and being overweight—increase his susceptibility to severe symptoms were he to contract COVID-19.  (ECF No. 61, at 16.)

However, Mr. Wilt fails to provide any particularized details regarding the severity of his conditions.  Mr. Wilt does not allege that any of his conditions presents a "serious functional or cognitive impairment" or that he is "experiencing deteriorating physical or mental health because of the aging process" that "substantially diminishes [his] ability to provide self-care within the

environment of a correctional facility and from which he . . . is not expected to recover." *See* U.S.S.G. § 1B1.13(B). Indeed, Mr. Wilt reports that the warden reviewed his medical records and determined that Mr. Wilt could care for his daily needs while incarcerated, (ECF No. 61, at 14), and there is nothing in the record to suggest otherwise. Although Mr. Wilt notes his age— he is 60 years old—(ECF No. 61, at 15), the Guidelines provide that age may constitute an extraordinary and compelling reason only where the defendant is at least 65 years old. *See* U.S.S.G. § 1B1.13(b)(2)(A). Mr. Wilt's chronic medical conditions do not warrant a reduction in his sentence.

### 2. Mr. Wilt's Ceased Medications

Second, Mr. Wilt alleges that his medications have been stopped "'for no known reason.'" (ECF No. 61, at 2 (quoting ECF No. 54).) However, a review of the exhibits attached to Mr. Wilt's *pro se* Motion for Compassionate Release reveals that a physician's assistant at USP Canaan explained to Mr. Wilt that "Dr. Sommer recommends pursuing therapy over medication for your mental health. We can discuss this again at your next clinic." (ECF No. 54, at 7.) On this record, this Court does not see a basis to question the judgment of medical professionals in electing to pursue therapy over medication for Mr. Wilt's mental health. The decision to pursue therapy over medication to treat Mr. Wilt's mental health conditions falls far short of a failure to provide long-term or specialized medical care without which the defendant is at risk of serious deterioration in health or death. *See* U.S.S.G. § 1B1.13(b)(1)(C). On the record before this Court, Mr. Wilt's ceased medications do not warrant a reduction in his sentence.

### 3. Mr. Wilt's Increased Susceptibility to COVID-19

Finally, as of October 9, 2024, FCI Hazelton has zero active COVID-19 cases among inmates and staff. *See Inmate COVID-19 Data*, BUREAU OF PRISONS, https://www.bop.gov/

18

about/statistics/statistics_inmate_covid19.jsp (last visited November 1, 2024).  Clearly, FCI

Hazelton is not a "correctional facility affected or at imminent risk of being affected" by an

ongoing outbreak of infectious disease.  *See* U.S.S.G. § 1B1.13(b)(1)(D)(i).  Thus, the

Guidelines provision authorizing a sentence reduction based on the risk of serious medical

complications or death due to an outbreak of infectious disease do not apply to Mr. Wilt based on

COVID-19.  *See* U.S.S.G. § 1B1.13(D) (requiring among other criteria that the defendant's

correctional facility be affected or at imminent risk of being affected by an ongoing outbreak of

infectious disease).

The Court recognizes the grave health risks prisoners have faced during the COVID-19

pandemic and commends nationwide efforts to promptly vaccinate prison staff and inmates.

Fortunately, based on current COVID-19 trends, the United States Department of Health and

Human Services allowed the federal Public Health Emergency for COVID-19 to expire on May

11, 2023.[18]  Considering the foregoing, this record does not justify Mr. Wilt's immediate release

from federal imprisonment due to his medical conditions, either alone or in combination with the

other factors discussed *infra*.  Given the context of the pandemic and the lack of any imminent

risk of a COVID-19 outbreak at FCI Hazelton, Mr. Wilt's increased risk of severe complications

were he to contract COVID-19 does not warrant a reduction in his sentence at this time.

**B.**     **Mr. Wilt's Status as a Victim of Assault Does Not Establish an**
         **Extraordinary and Compelling Reason for Release**

Mr. Wilt's Motion for Compassionate Release further contends that the Court should

grant his immediate release because he was assaulted numerous times, "'lifeflighted,'" and

---

[18] *See COVID-19 Public Health Emergency*, U.S. DEP'T OF HEALTH & HUMAN SERVS.,
https://www.hhs.gov/coronavirus/covid-19-public-health-emergency/index.html#:
~:text=Based%20on%20current%20COVID%2D19,day%20on%20May%2011%2C%202023
(last visited November 1, 2024).

"'died/revived.'" (ECF No. 61, at 2 (quoting ECF No. 54).)  In support of his contention that his

assault warrants a sentence reduction, Mr. Wilt reports that in June 2020, other inmates at USP

Victorville brutally assaulted him, resulting in his transfer to the hospital.  (ECF No. 61, at 15.)

Mr. Wilt claims that the assault "involved blunt head trauma" and "some amnesia of the event,"

resulting in his transport "to the hospital for a CT scan" and assessment of "multiple rib fractures

and a head laceration."  (ECF No. 61, at 15.)

The record does not show that Mr. Wilt faces a particular risk to his well-being by

remaining in custody at FCI Hazelton.  BOP transferred Mr. Wilt out of USP Victorville, where

the serious assault occurred.  No evidence exists that Mr. Wilt remains at an elevated risk of

further assault by inmates at FCI Hazelton.  Finally, Mr. Wilt's disciplinary records reveal that

he has assaulted other inmates on two occasions, albeit without serious injury in either episode.

(ECF No. 67, at 29; ECF No. 67-3, at 1–2.)

### C. Notwithstanding the Change in Predicate Offenses for the Career Offender Enhancement, Mr. Wilt Would Still Qualify as a Career Offender Were He Sentenced Today

Mr. Wilt's Motion for Compassionate Release argues that he was sentenced as a career

offender for offenses that no longer constitute crimes of violence, and that this intervening

change in the predicate offenses warrants his immediate release.  (ECF No. 61, at 2, 9–14.)  Mr.

Wilt correctly states that his burglary convictions, which qualified as a crime of violence under

the previous guidelines, no longer qualify.  (ECF No. 61, at 9–12.)  However, Mr. Wilt still

would qualify as a career offender were he sentenced today.

Even though Burglary, Second Degree no longer constitutes a crime of violence under the

guidelines, Mr. Wilt's conviction for Possession of an Unregistered Sawed-Off Shotgun

constitutes a crime of violence under the current guidelines.  (ECF No. 69, at 1 n.1; ECF No. 21

¶ 34 (explaining that Mr. Wilt possessed "a .410 shotgun with a 12 ½ inch barrel" and that "the stock of the gun had been cut off")); *see also* U.S.S.G. § 4B1.2(a)[19] (defining "crime of violence" to include use or unlawful possession of a firearm described in 26 U.S.C. § 5845(a)); 26 U.S.C. § 5845(a)[20] (defining "firearm" to include "a shotgun having a barrel or barrels of less than 18 inches in length"). Thus, Mr. Wilt's convictions for Attempted Threat Against Life/Property, 3rd Degree, (ECF No. 21¶ 35), and for Possession of an Unregistered Sawed-Off Shotgun, (ECF No. 21 ¶ 34), would qualify him for a Career Offender Enhancement pursuant to U.S.S.G. § 4B1.1 were he sentenced today.

Because the Court rejects Mr. Wilt's argument for a reduction based on the changes to the qualifying offenses for the Career Offender Enhancement pursuant to U.S.S.G. § 4B1.1, the Court declines to consider the constitutional challenge to U.S.S.G. § 1B1.13(b)(6) that the Government raises in response. (*See* ECF No. 67, at 15–28.)

---

[19] Section 4B1.2(a) states in pertinent part:

(a) <u>Crime of Violence</u>.—The term "crime of violence" means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—
     \*     \*     \*
     (2) is murder, voluntary manslaughter, kidnapping, aggravated assault, a forcible sex offense, robbery, arson, extortion, *or the use or unlawful possession of a firearm described in 26 U.S.C. § 5845(a)* or explosive material as defined in 18 U.S.C. § 841(c).

U.S.S.G. § 4B1.2(a) (emphasis added).

[20] 26 U.S.C. § 5845(a) states, in pertinent part: "The term 'firearm' means (1) a shotgun having a barrel or barrels of less than 18 inches in length." 26 U.S.C. § 5845(a).

**D.**    **The 3553(a) Factors Do Not Support a Reduction in Mr. Wilt's Sentence**

Although the Court has found that no extraordinary and compelling reasons exist that warrant Mr. Wilt's release, the Court will nonetheless consider Mr. Wilt's request under the applicable statutory sentencing factors articulated in 18 U.S.C. § 3553(a).

Upon review, the nature and circumstances of Mr. Wilt's offense remain serious.  Mr. Wilt robbed a store clerk at gun-point.  (ECF No. 21 ¶ 9.)  This is his third conviction for a violent offense.  Additionally, Mr. Wilt's criminal history, which qualifies him as a Career Offender pursuant to U.S.S.G. § 4B1.1, (ECF No. 21 ¶ 44), demonstrates a high risk of recidivism and presents a threat to the public through his disregard for the law.  Mr. Wilt's criminal history includes convictions for arranging to distribute for value a controlled substance; theft; grand theft; multiple counts of burglary; forgery; failure to appear; entering or remaining unlawfully in a building with intent to commit a theft, felony, or assault; possession of an unregistered sawed-off shotgun; attempted threat against life/property; and multiple counts of aggravated assault.  (ECF No. 21 ¶¶ 24–35.)  Further, this criminal conduct spans Mr. Wilt's entire adulthood, with his age at conviction ranging from eighteen to forty-four.  (ECF No. 21 ¶¶ 24–35.)  Mr. Wilt acknowledges that "[s]ince age 18, he has been back and forth to prison, largely based on numerous parole violations," (*see* ECF No. 61, at 18)—which indicates that Mr. Wilt repeatedly failed to comply with terms of supervision.

Mr. Wilt notes that he "has a documented history of mental illness beginning as early as 1985 including diagnoses of Post-Traumatic Stress Disorder and Anti-Social Personality Disorder." (ECF No. 61, at 18 (citing ECF No. 21 ¶ 57).)  Although Mr. Wilt states that mental health treatment "can be obtained while on supervised release," (ECF No. 61, at 18), Mr. Wilt can likewise receive mental health treatment within BOP.  Further, Mr. Wilt does not propose

22

conditions of release that would protect the safety of the community. While Mr. Wilt notes that "his convictions for aggravated assault were all part of the same incident" apparently resulting from a mental health episode, (ECF No. 68, at 4), this fact cuts both ways and does not persuade the Court that Mr. Wilt will not pose a danger to the public or that the safety of the community will be protected were he to be released.

In *United States v. Martin*, the Fourth Circuit vacated and remanded the district court's denial of both defendants' motions to reduce sentence because the district court failed to address any new mitigating evidence when denying the motions. 916 F.3d at 397–98. The Fourth Circuit explained that if an individual is eligible for a sentence reduction, the district court must give weight to the person's "past transgressions" as well as "the multitude of redemptive measures that [the person] has taken." *Id.* at 397. However, Congress has made clear that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t). With these dictates in mind, the Court acknowledges and commends Mr. Wilt's participation in BOP programs[21] and encourages him to continue to do so but cannot find that these measures warrant a sentence reduction due to the nature and circumstances of his underlying conviction, the totality of his record, and the need to protect the public.

In addition, Mr. Wilt's disciplinary record before the Court does not support his request for release. Mr. Wilt has received sanctions for two episodes of assaulting without serious injury, the most recent of which occurred in May 2022. (ECF No. 67-3, at 1–2.) He has also

---

[21] At the time of filing, Mr. Wilt had completed twenty-eight educational courses during his incarceration, including, among others, Practical Life Sills; Class on Memory/Organization; Public Speaking Class; SHU Pre-Algebra and other mathematics courses; Basic Nutrition Course; Change Plan; Responsible Thinking; and Anger Management. (ECF No. 61, at 19; ECF No. 61-5, at 1.)

received sanctions for two instances of using drugs/alcohol, two instances of possessing drugs/alcohol, phone abuse, smoking in unauthorized area, two episodes of possessing unauthorized item, and failing to follow safety regulations.  (ECF No. 67-3, at 1–4.)  These disciplinary infractions span the duration of his incarceration, with the exception of a period from October 2006 to March 2014 during which he incurred no infractions.  (ECF No. 67-3, at 1–4.)  Thus, in addition to considering "the multitude of redemptive measures that [Mr. Wilt] has taken", *see Martin*, 916 F.3d at 397, the Court also notes that other of Mr. Wilt's actions since incarcerated weigh against a finding of redemption and rehabilitation.  In total, consideration of the § 3553(a) factors would not support compassionate release even if this Court were to find an "extraordinary and compelling reason[]" to reduce Mr. Wilt's sentence.  *See* 18 U.S.C. § 3582(c)(1)(A).

## IV.  Conclusion

For the reasons explained above, the Court will deny the Motion for Compassionate Release.  (ECF No. 61.)

An appropriate Order shall issue.

Date: 11/4/2024
Richmond, Virginia

_____
/s/
M. Hannah Lauck
United States District Judge